## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| LORRINE THOMPSON, as Administratix of the Estate of JERRY THOMPSON, deceased, | ) ) ) | |
| Plaintiff, | ) ) | CASE NO. 2:06-cv-189-WKW-VPM |
| vs. | ) ) | |
| TMA FOREST PRODUCTS GROUP, etc., et al, | ) ) | |
| Defendants. | ) ) ) | |

## DEFENDANT PACTIV CORPORATION'S REPLY BRIEF
## IN SUPPORT OF ITS RULE 12(B)(6) MOTION TO DISMISS AND
## RULE 12(E) MOTION FOR A MORE DEFINITE STATEMENT

Pactiv filed its Rule 12(b)(6) Motion to Dismiss, or, in the alternative, Rule 12(e) Motion for a More Definite Statement, on March 22, 2006.  Pactiv's Motion to Dismiss raised several narrow legal issues based on Plaintiff's allegations in the Complaint, including whether Plaintiff's claims are timely under Alabama law given that Pactiv ceased operations at the wood treatment facility in November 1983.  Pactiv's Motion to Dismiss also identified additional legal flaws with many of the individual counts in the Complaint, most of which are not fixable even if Plaintiff further amended the complaint.

Plaintiff's response, filed on April 26, 2006, relies on 13 extraneous affidavits and other documents not referenced in the Complaint.  Each one of these exhibits submitted by Plaintiff is either (a) entirely irrelevant to the narrow legal issues presented by Pactiv's Motion to Dismiss, or (b) an attempt to make up for the failure to include in the Complaint sufficient allegations to state a claim.

13314766.1

The scope of review on a Rule 12(b)(6) motion to dismiss, however, "must be limited to the four corners of the complaint." *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002) (citing *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). It is "axiomatic that a plaintiff cannot amend a complaint by arguments . . . made in opposition to a motion to dismiss." *Kuhn v. Thompson*, 304 F. Supp. 2d 1313, 1321 (M.D. Ala. 2004) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984), *cert denied* 470 U.S. 1054 (1985)). These exhibits should be stricken from Plaintiff's response and disregarded. The Complaint fails to state a claim as a matter of law and must be dismissed.

## ARGUMENT

**I.    Plaintiff's Claims Are Barred By The Applicable Statutes of Limitations.**

Plaintiff's claims against Pactiv are untimely. *See* Ala. Code §§ 6-2-34, 6-2-38(l) (maximum 6-year limitations period). Although Plaintiff's response floods the Court with extraneous exhibits, there is only one fact that is relevant to the narrow legal issue presented by Pactiv's Motion to Dismiss. Plaintiff alleges it in the Complaint—Pactiv ceased operations at the wood treatment facility in November 1983. *See* Complaint ¶ 42.

Plaintiff's response does not dispute the state law accrual rules set forth in Pactiv's opening brief. Alabama applies a first injury rule, not a discovery rule. *See* Pactiv's Memorandum of Law at 5-6. A cause of action accrues whether or not the full amount of damages are apparent at the time of the first legal injury. *See Garrett v. Raytheon Corp.*, 368 So. 2d 516, 519 (Ala. 1979). In toxic tort cases, the first legal injury occurs at the time of <u>exposure</u>, not when the injury advances to the point of discovery. *Id.* at 520-21; *see also Becton v. Rhone-Poulenc, Inc.*, 706 So. 2d 1134, 1135-36 (Ala. 1997); *Johnson v. Garlock, Inc.*, 682 So. 2d 25, 26, 28 (Ala. 1996); *Hillis v. Rentokil, Inc.*, 596 So. 2d 888, 889-90 (Ala. 1992). And under the

"last exposure" rule, which is premised on the continuous tort doctrine, the limitations period begins to run on the date of the last exposure concurrent with the defendant's tortious conduct. *See* Pactiv's Memorandum of Law at 7-9.

Pactiv's alleged tortious conduct ceased in November 1983 when it sold the facility to Louisiana-Pacific. *See* Complaint ¶ 42. Applying the last exposure rule, the decedent's "first injury" therefore occurred no later than November 1983.

Plaintiff offers two responses. First, Plaintiff argues that even though Pactiv no longer operated the facility after 1983, the alleged passive migration of Pactiv's contaminants is continuing conduct and thus a continuous tort. Plf. Response at 15-16. Second, Plaintiff argues that Section 309 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9658, applies in this case and preempts Alabama's first injury rule, even though Plaintiff has not asserted a CERCLA claim and the decedent did not incur cleanup costs. Plf. Response at 5-12. Neither argument has merit.

### A. Passive Migration Of Contaminants After Operations Cease Does Not Involve Any Ongoing Conduct And Is Not A Continuous Tort.

Plaintiff characterizes alleged <u>passive migration</u> after Pactiv ceased operations in 1983 as <u>ongoing conduct</u> sufficient to support a continuous tort. Plf. Response at 15-16. But Plaintiff's allegations present a textbook example of a fixed act followed by multiple consequences, which is <u>not</u> a continuous tort under Alabama law. Pactiv's alleged tortious conduct was not repeated after 1983. It could not have been. Pactiv no longer operated the facility.

As set forth in Pactiv's Memorandum of Law (at 9-11), it is well-established that a continuous tort only occurs where a defendant engages in "repeated tortious conduct which has repeatedly and continuously injured a plaintiff." *Moon v. Harcros Drugs, Inc.*, 435 So. 2d 218, 220 (Ala. 1983). In contrast, "Alabama law does not recognize a continuing tort in instances

where there has been a single act followed by multiple consequences." *Payton v. Monsanto Co.*, 801 So. 2d 829, 835 & n.2 (Ala. 2001). *See also Haynie v. Howmedia Osteonics Corp.*, 137 F. Supp. 2d 1292, 1294-95 (S.D. Ala. 2000) ("[I]t takes more than a continuous injury to satisfy the continuous tort theory. The tortious conduct itself must also be repeated.").

Passive migration of contaminants after the cessation of operations is not a continuous tort. *See LaBauve v. Olin Corp.*, No. 03-0567, 2005 U.S. Dist. LEXIS 284440, at *70-71 (S.D. Ala. 2005) (applying Alabama law and holding that "a defendant's failure to clean up contamination that predates the limitations period, or the migration of such 'old' contamination from one location to another, does not constitute a continuous tort, as a matter of law"). *See also Vill. of Milford v. K-H Holding Corp.*, 390 F.3d 926, 933 (6th Cir. 2004); *Achee v. Port Drum Co.*, 197 F. Supp. 2d 723, 735-36 (E.D. Tex. 2002); Pactiv's Memorandum of Law at 10. Plaintiff entirely ignores these cases in her response.

In *Payton v. Monsanto Co.*, the only case cited by Plaintiff, the Alabama Supreme Court reaffirmed that <u>active conduct</u> is required for a continuous tort. 801 So. 2d at 835. The Court stressed that in environmental cases, the continuous tort doctrine only applies if the case "involve[s] repetitive acts or ongoing wrongdoing." *Id.* at 835 n.2 (noting that past cases have involved "ongoing discharge," "repetitive acts," and "ongoing operations"). The Court went on to hold that the continuous tort doctrine could apply in that case because even though Monsanto stopped manufacturing PCBs in the 1970s, Monsanto <u>still operated the facility</u> and the plaintiff alleged that Monsanto's "conduct [of discharging PCBs] continued until the time of the commencement of the action." *Id.* at 836. Monsanto, in turn, "offered no evidence contradicting the allegations . . . that wrongful conduct continue[d]." *Id.*

In this case, the Complaint establishes that Pactiv's conduct ceased in 1983: "Beginning November, 1983, Louisiana-Pacific . . . began ownership and operation of the subject wood treatment facility." Complaint ¶ 42.

To be clear, Plaintiff certainly alleges ongoing <u>consequences</u> as a result of Pactiv's historic operations. *See* Plf. Response at 15-16 (alleging that Pactiv spread contaminated ashes on the ground which resulted in continuing releases). But Plaintiff does not, and cannot, allege that Pactiv's <u>conduct</u> (*i.e.* spreading the ashes) continued after 1983. Alleged passive migration after Pactiv was no longer at the property is a far cry from Monsanto's continued discharges in the course of ongoing operations. This is a dispositive difference, one that courts in Alabama have already recognized. *See LaBauve*, 2005 U.S. Dist. LEXIS 284440, at *70-71 (passive migration is not a continuous tort). Repeated consequences, without ongoing conduct, is not a continuous tort. The decedent's claims therefore accrued by November 1983.[1]

**B.    CERCLA § 309 Does Not Preempt The State Law Accrual Date Because Plaintiff Does Not, And Cannot, Assert A CERCLA Claim.**

Plaintiff, in a last-ditch effort to save her claims, turns to a provision embedded in CERCLA, 42 U.S.C. § 9658 ("CERCLA § 309"). Yet, in this wrongful death action, Plaintiff does not assert any claims remotely dealing with cleanup or remedial activities. Nor does

---

[1] The economic damage caused by Pactiv's alleged emissions and releases independently triggered the limitations period on all of Plaintiff's claims. Pactiv Memorandum of Law at 11-12 (citing *Spain v. Brown & Williamson Tobacco Corp.*, 872 So. 2d 101 (Ala. 2003)). Plaintiff argues that *Spain* did not hold that the accrual of one cause of action triggers another. But the Alabama Supreme Court held that "the economic loss attributable to supporting an addiction" (*i.e.*, injury to the decedent's pocketbook), accrues claims for "other damages [that] might follow, including, but not limited to, injury to the person." 872 So. 2d at 114. Plaintiff's assertion that "[t]he [*Spain*] decedent's addiction to nicotine affected her body, not her property" is plainly incorrect. Plaintiff also argues that Pactiv has not set forth any facts to show property damage. Again, Plaintiff misconstrues the scope of review on a Rule 12(b)(6) motion. Plaintiff alleged facts, that if true, would show economic damage. *See* Complaint ¶ 91 ("[T]oxic chemicals [were] deposited in Plaintiff's home and environment.").

Plaintiff allege that the facility is a designated CERCLA site subject to cleanup under CERCLA. Nonetheless, Plaintiff argues that CERCLA § 309 circumvents Alabama's first injury rule. Plaintiff's attempt to take shelter under CERCLA § 309 must fail.  CERCLA § 309 does not apply, and was never intended by Congress to apply, beyond the scope of the statute itself.  Since Plaintiff does not (and cannot) assert a CERCLA claim along with her wrongful death claim in this case, CERCLA § 309 can provide no refuge to dismissal.

In *Becton v. Rhone-Poulenc, Inc.*, 706 So. 2d 1134, 1137 (Ala. 1997), the Alabama Supreme Court aptly recognized that "[m]ost federal courts have limited the application of [CERCLA § 309] to situations where an underlying CERCLA claim has been made or could exist based on the presence of hazardous waste—where there is an underlying claim dealing with, or cause of action providing for, cleanup and remedial activities."  (emphasis added). Although *Becton*'s holding was based in part on the conclusion that CERCLA § 309 does not apply to workplace releases, the *Becton* court also engaged in a broader in-depth analysis of the statute and case law and concluded that CERCLA § 309 "reflects an intent to confine its purposes to the scope of CERCLA itself."  *Id.* at 1142.

"The primary purpose of CERCLA is the prompt cleanup of hazardous waste sites." *State v. EPA*, 871 F.2d 1548, 1557 (11th Cir. 1989).   If CERCLA § 309 could apply without an underlying CERCLA claim, "it would give this isolated section of the Act a far more expansive effect than that of the balance of the Act."  *Knox v. AC & S, Inc.*, 690 F. Supp. 752, 757 (S.D. Ind. 1988).  "[A] statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent.   Consequently, each part or section should be construed in connection with every other part or section so as to produce a harmonious whole."  *Id.  See also*

*King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) ("[A] statute is to be read as a whole since the meaning of statutory language, plain or not, depends on context.").

As *Becton* explained, most courts have rightly limited the scope of CERCLA § 309 to cases involving an underlying CERCLA claim.[2]  *See, e.g., Knox*, 690 F. Supp. at 758 ("[T]he wording of [CERCLA § 309] and its incorporation of the terms of CERCLA and the CERCLA definition of those terms indicate that the provision was limited to application in the situation where a state cause of action exists in conjunction with a CERCLA cause of action."); *Elec. Power Bd. v. Westinghouse Elec. Corp.*, 716 F. Supp. 1069, 1081 (E.D. Tenn. 1988) ("[T]he [plaintiff] has asserted no cause of action under [CERCLA], but seeks only to have the benefit of one of its provisions to avoid the Tennessee statute of repose.").[3]

In addition, principles of comity require CERCLA § 309 to apply only within the substantive limits of CERCLA itself.  These principles "demand that in our federal system, state law not be preempted unless it is the clear and manifest purpose of Congress."  *First United Methodist Church v. U.S. Gypsum Co.*, 882 F.2d 862, 869 (4th Cir. 1989) (holding that CERCLA § 309 does not preempt state law, as applied to asbestos removal actions, as such actions have been placed outside the scope of CERCLA).  *See also Covalt v. Carey Canada Inc.*, 860 F.2d 1434, 1439 (7th Cir. 1988) ("Giving [CERCLA § 309] its broadest possible meaning . . .

---

[2] Some of these cases addressed whether CERCLA § 309 could preempt a state statute of repose without an underlying CERCLA claim.  Since these courts determined that CERCLA § 309 could not apply in any event, the courts did not reach the separate issue presented here in Part II.B—whether CERCLA § 309 can apply to a repose period at all.

[3] Plaintiff's attempt to distinguish these cases is unavailing.  Plf. Response at 10 n.6.  Plaintiff asserts that *Knox* involved a workplace release which would be excluded from CERCLA § 309.  This was not the basis for the holding in *Knox*, which expressly held, after a thorough analysis, that CERCLA § 309 cannot apply without an underlying CERCLA claim.  Plaintiff attempts to distinguish *Electric Power Board* because it involved a "miniscule release" from something other than a "typical facility."  These irrelevant factual differences are no reason to discard the court's sound legal analysis.

preempts wide sweeps of state law—something we do not lightly attribute to Congress."); *cf.*

*Becton*, 706 So. 2d at 1142 ("[T]he rebirth of federalism in *United States v. Lopez*, 514 U.S. 549

(1995), may call into question the constitutionality of [CERCLA § 309].").[4]

Congress did not clearly and manifestly intend for CERCLA § 309 to apply where a

CERCLA claim was not asserted.  Just the opposite, the key report to Congress which led to the

enactment of CERCLA § 309 made clear that the federal discovery rule would <u>not</u> preempt a

state statute of limitations unless there was also a CERCLA claim:

> The remedies discussed in this report are legal remedies for
> personal injury, environmental damages and reduction of property
> value resulting from spills of hazardous substances and disposal of
> hazardous wastes <u>for which CERCLA provides cleanup and
> remedial activities</u>.

*Knox*, 690 F. Supp. at 757 (quoting *Injuries and Damages from Hazardous Waste*, A Report to

Congress in Compliance with Section 301(e) of [CERCLA], 97th Cong. 2d Sess. (1982))

(emphasis added).  Congress thus recognized that the scope of CERCLA § 309 was not broader

than the scope of the Act itself.

Plaintiff holds out *Tucker v. Southern Wood Piedmont Co.*, 28 F.3d 1089 (11th Cir.

1994), as a "white horse case."  Plf. Response at 5.  *Tucker* is a horse of a different color.  Unlike

here, the plaintiff in *Tucker* asserted property damage claims under state and federal law,

---

[4] Indeed, CERCLA § 309 exceeds the scope of permissible Congressional power under the Commerce Clause.  The Commerce Clause vests Congress with the power to "regulate Commerce . . . between the several States."  U.S. Const., Art. I, §8, cl. 3.  This power extends only to laws regulating the channels of interstate commerce, the instrumentalities of interstate commerce, and activities that substantially effect interstate commerce.  *See United States v. Lopez*, 514 U.S. 549, 559-563 (1995).  CERCLA § 309 also violates the Tenth Amendment.  The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."  CERCLA § 309 impermissibly "commandeer[s]" Alabama's legislative and executive functions, forcing Alabama to adopt and enforce a different commencement date for the running of Alabama's statutes of limitations. *See, e.g. Hodel v. Virginia Surface Mining & Reclamation Ass'n.*, 452 U.S. 264, 288 (1981).

including a <u>CERCLA claim</u> for response costs and natural resource damages.  *See Tucker*, Brief for Appellant, 1993 WL 13128896, at *2.  As the Alabama Supreme Court explained, "no issue was raised in *Tucker* as to whether [CERCLA § 309] would apply in the absence of underlying CERCLA claims. . . ."  *Becton*, 706 So. 2d at 1140.  *Tucker* is therefore entirely irrelevant to the legal issue presented by Pactiv's Motion to Dismiss.[5]

Plaintiff tries to make up for the fact that she did not assert a CERCLA claim by arguing that "[c]learly, an underlying CERCLA claim could be maintained against the defendants in this case."  Plf. Response at 10.  This is far from clear.  Even if the mere <u>possibility</u> of asserting a CERCLA claim were enough to trigger CERCLA § 309, which it is not under cases such as *Knox*, Plaintiff <u>could not</u> assert a CERCLA claim in this case.

There are four elements to a CERCLA claim:  (1) the site must be a "facility"; (2) there must be a release or threatened release of a hazardous substance; (3) which caused the plaintiff to incur response costs consistent with the National Contingency Plan ("NCP"); and (4) the defendant must be a potentially responsible party.  *See, e.g., Blasland, Bouck & Lee, Inc. v. City of N. Miami*, 283 F.3d 1286, 1302 (11th Cir. 2002).  Plaintiff does not allege that the decedent incurred any response costs at all, let alone consistent with the NCP.  Thus, there is no indication that Plaintiff could assert a CERCLA claim here on the decedent's behalf.  This wrongful death case simply has nothing to do with CERCLA.

---

[5] Plaintiff also relies on two other cases, *Kowalski v. Goodyear Tire & Rubber Co.*, 841 F. Supp. 104 (W.D.N.Y. 1994), and *Tower Asphalt, Inc. v. Determan Welding & Tank Service, Inc.*, 530 N.W.2d 872 (Minn. Ct. App. 1995).  As *Becton* noted, the *Kowalski* court "ignored other jurisdictions' interpretations of the kind of situations CERCLA was designed to remedy."  706 So. 2d at 1140-41.  The *Tower* court then built off that mistake, citing only *Kowalski*, and not even addressing the significant issues raised in cases such as *Knox*, *Electric Power Board*, *First United Methodist Church*, and *Covalt*.

Moreover, even assuming that the decedent did incur NCP-consistent response costs before his death, Plaintiff cannot recover those costs in this wrongful death action.  As Plaintiff concedes, under Alabama law, a decedent's unfiled claims do not survive in favor of the personal representative.  *See* Pactiv's Motion to Dismiss at 14-15 (citing Ala. Code § 6-5-462); Plf. Response at 17.  *See also King v. Nat'l Spa & Pool Inst., Inc.*, 607 So. 2d 1241, 1246 (Ala. 1992) (a wrongful death claim does not allow for compensatory damages).  Plaintiff therefore lacks standing to assert a CERCLA claim to bring this case within the scope of CERCLA § 309.

The CERCLA § 309 discovery rule cannot apply to Plaintiff's state law claims since Plaintiff has not (and cannot) assert a CERCLA claim.[6]  Plaintiff's claims are thus time-barred pursuant to Alabama's first injury rule.  The claims accrued over 20 years ago and the limitations periods have long-since expired.

## II.     Plaintiff's Claims Are Barred By Alabama's Rule Of Repose.

Even assuming that Plaintiff's claims are timely under the applicable limitations periods, Plaintiff's claims are still barred by Alabama's 20-year rule of repose.  The parties disagree as to what triggers the rule of repose.  The difference is immaterial in this case.  Even if Plaintiff is right that the rule of repose "begins running on a claim as soon as all of the essential elements of that claim coexist," that simply invokes Alabama's first injury rule for accrual.  As explained in Part I above, under Alabama's first injury rule, the decedent's claims against Pactiv still accrued in November 1983.  Importantly, even though the limitations and repose periods would both run

---

[6] Even assuming that CERCLA § 309 preempted state law in this case, it could not apply to Plaintiff's AMELD claim (Count 7) relating to Pactiv's alleged sale of firewood.  Plaintiff cannot satisfy a basic element of CERCLA § 309—a release from a "facility."  Consumer products are expressly exempted from the definition of a "facility."  42 U.S.C. § 9601(9) ("The term 'facility' . . . does not include any consumer product in consumer use. . . ."); *see also Elec. Power Bd.*, 716 F. Supp. at 1081.  Pactiv therefore is not the owner or operator of any facility where a release occurred with respect to the firewood.

from the accrual of the decedent's claims, the longer repose period still comes into play in this case due to the potential impact of CERCLA § 309.  Even if the Court were to find that the CERCLA § 309 discovery rule preempted the first injury rule in the context of the statute of limitations, <u>CERCLA § 309 cannot preempt the running of a state repose period</u>.

**A.     Alabama's 20-Year Repose Period Runs From November 1983.**

**i.     The Rule Of Repose Is Triggered By The Defendant's Conduct, Not The Accrual Of A Plaintiff's Claim.**

As set forth in Pactiv's Motion to Dismiss, "[a]pplication of Alabama's rule of repose has only one element—the passage of <u>twenty years</u> time from the moment the <u>actions</u> giving rise to the claim <u>occurred</u>—and, if that time has elapsed, no claim can be pursued." *Morgan v. Exxon Corp.*, 869 So. 2d 446, 448 (Ala. 2003) (emphasis in original) (citing *Moore v. Liberty Nat'l Ins. Co.*, 108 F. Supp. 2d 1266, 1275 (N.D. Ala. 2000), *aff'd* 267 F.3d 1209 (11th Cir. 2001)).  The rule of repose is "triggered merely by the alleged wrongful conduct of the defendant." *Id.* at 449. "A defining characteristic of the rule of repose is that its time period does not begin to run when an action accrues, but rather when the relevant action occurs." *Moore*, 267 F.3d at 1218.

Plaintiff suggests a different rule for starting the repose period.  Plaintiff relies on language from certain cases stating that the rule of repose "begins running on a claim as soon as all of the essential elements of that claim coexist."  Plf. Response at 12.  Thus, according to Plaintiff, the repose period only runs once a claim accrues, just like a limitations period.  But if the limitations and repose periods are both triggered by accrual, the longer 20-year repose period would be rendered superfluous in most cases.  The rule of repose, which has been applied by Alabama courts for more than a century, should not be interpreted to yield such a result.

Plaintiff cites *Snodgrass v. Snodgrass*, 58 So. 201, 202 (Ala. 1912), for the proposition that the rule of repose "is premised upon the concept that 'it is inequitable to allow those who

have slept upon their rights for a period of 20 years' to file suit." Plf. Response at 13. Thus,

Plaintiff reasons, "one cannot 'sleep' on his rights until he has the right to commence an action."

*Id.* But as the Alabama Supreme Court went on to explain in *Snodgrass*, the rule of repose:

> rests not only on the want of diligence in asserting rights, but on the <u>higher ground</u> that is necessary to suppress frauds, to avoid long dormant claims, . . . [and to] relieve[] courts from the necessity of adjudicating rights so obscure by the lapse of time and the accidents of life that the attainment of truth and justice is next to impossible.

58 So. at 202 (emphasis added). Accordingly, the proper trigger for the repose period is the

defendant's conduct. *See, e.g., Morgan*, 869 So. 2d at 447-49, 452 (holding that claims seeking

damages for contamination against defendants that did not operate the oil wells at issue since the

1960s and 1970s were barred by the rule of repose).

### ii.    Even If The Repose Period Is Triggered By The Accrual Of Plaintiff's Claims, Plaintiff's Claims Still Accrued In November 1983.

In this case, however, each party's interpretation of when the rule of repose starts to run

yields the same result—November 1983. Plaintiff's insistence that "all of the essential elements

of [a] claim" must be present simply invokes the first injury rule, which governs accrual under

Alabama law. *See, e.g., Moon v. Harco Drugs, Inc.*, 435 So. 2d 218, 220 (Ala. 1983) (a claim

accrues "when the injury occurs"). As set forth in detail in Pactiv's Memorandum of Law (at 5-

11), and in Part I herein, the decedent's claims accrued in November 1983 when all elements of

the claims (including injury) would have been present.

Plaintiff's argument that the decedent's claims could not have accrued in 1983 ignores

long-standing Alabama Supreme Court precedent. A claim based on exposure to toxic

substances accrues at the time of exposure. A plaintiff cannot wait to sue until the injury

advances to the point of discovery. *See Garrett v. Raytheon Co.*, 368 So. 2d 516, 520-21 (1979)

(holding that plaintiff's claim accrued when he was exposed to radiation from 1955 through 1957, not when he first experienced symptoms in 1975); *see also Becton v. Rhone-Poulenc, Inc.*, 706 So. 2d 1134, 1135-36 (Ala. 1997) (holding that plaintiff's claim accrued when he was exposed to carbon disulfide from 1952 though 1986, not when he first experienced symptoms and was diagnosed); *Johnson v. Garlock, Inc.*, 682 So. 2d 25, 26, 28 (Ala. 1996) (holding that plaintiffs' claims accrued when they were exposed to asbestos before 1978, not when they were first diagnosed with asbestos-related diseases in 1992).

Pursuant to the first injury rule, <u>exposure to a toxic substance is a concurrent injury</u>, a completed wrong, even though "the progressive nature of the injury has not made itself manifest at the time of the last exposure." *Garrett*, 368 So. 2d at 520-21. Toxic torts are <u>not</u> "cases where the act complained of does not itself constitute a legal injury at the time," in which case a cause of action would not accrue until damages are sustained. *Id.* at 519-20. The exposure itself is a present injury that completes the elements of a plaintiff's claim.

Plaintiff's citation to cases that require a "manifest, present injury" thus misses the mark. Plf. Response at 13-14. For example, *Thomas v. BSE Industrial Contractors*, 624 So. 2d 1041 (Ala. 1993), involved post-1980 asbestos exposures. In 1980, the Alabama legislature exempted asbestos claims, and only asbestos claims, from the first injury rule. *See* Ala. Code § 6-2-30(b). The *Thomas* plaintiff's claims were thus subject to a discovery rule, and unlike here, would not have accrued at the first injury, the point of exposure. In contrast, in *Johnson*, the plaintiffs' asbestos claims were based on exposures that predated the statute and were thus subject to the

first injury rule, as is the case here.  The Court held that those claims accrued and could have been asserted at the time of exposure.  682 So. 2d at 26, 28.[7]

Alabama's 20-year rule of repose was triggered in November 1983.  That was when (a) Pactiv's conduct stopped, and (b) the decedent's claims accrued.  Plaintiff's claims against Pactiv are therefore time-barred under the Alabama rule of repose.

### B.    CERCLA § 309 Cannot Apply To Repose Periods.

Plaintiff half-heartedly asserts, without offering any explanation, that CERCLA § 309 "preempts not only the applicable accrual rule [for the statute of limitations], but also Alabama's rule of repose."  Plf. Response at 6.  Plaintiff's "argument" is contrary to the plain text of CERCLA § 309 and basic repose principles.  CERCLA § 309 does not demonstrate a clear and manifest intent by Congress to preempt state repose periods.

Even assuming that CERCLA § 309 can apply without an underlying CERCLA claim (which it cannot), by its own terms § 309 applies only to limitations periods, not repose periods.  CERCLA § 309 specifies that when certain requirements are met:

> If the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally-required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.

---

[7] Plaintiff's citation to *Hinton v. Monsanto Co.*, 813 So. 2d 827 (Ala. 2001), is equally unavailing.  The court's ruling in *Hinton*, which answered a certified question from a federal court only concerning the viability of a medical monitoring claim, was limited to the premise that the plaintiff did "not allege any past or present personal injury."  *Id.* at 828.  Accordingly, the court could not address the impact of *Garrett* and other first injury rule cases which hold that an actual, present injury occurs at the time of exposure.  *See, e.g., Hinton*, 813 So. 2d at 832 (Lyons, J., concurring).  None of the "manifest, present injury" cases cited in *Hinton* involved toxic torts, which are governed by *Garrett*'s exposure rule.  *Id.* at 829.

42 U.S.C. § 9658(a)(1) (emphasis added). *See also id.* § 9658(b)(2) (defining "applicable limitations period" to mean "the period specified in a statute of limitations during which a civil action . . . may be brought") (emphasis added); (b)(3) (defining "commencement date" to mean "the date specified in a statute of limitations as the beginning of the applicable limitations period") (emphasis added).

Courts have relied on this plain language to hold that CERCLA § 309 does not apply to state repose periods. *See BNSF v. Poole Chemical Co.*, 419 F.3d 355, 361-65 (5th Cir. 2005) ("[T]he reach of the plain language of [CERCLA § 309] does not extend to statutes of repose."); *McDonald v. Sun Oil Co.*, No. 03-1504, 2006 WL 696316, at *8-9 (D. Or. Mar. 14, 2006) ("[Section] 309 of CERCLA extends only to statutes of limitations.").

The difference between a statute of limitations and a statute or rule of repose is "substantive, not merely semantic." *BNSF*, 419 F.3d at 362; *McDonald*, 2006 WL 696316, at *9. As the Fifth Circuit in *BNSF* recently explained:

> A statute of limitations extinguishes the right to prosecute an accrued cause of action after a period of time. It cuts off a remedy. A statute of repose limits the time during which a cause of action can arise. . . . Thus, with the expiration of the period of repose, the putative cause of action evanesces; life cannot thereafter be breathed back into it.

*Id.* at 363 (citations omitted). *See also Moore v. Liberty Nat'l Ins. Co.*, 108 F. Supp. 2d 1266, 1275 (N.D. Ala. 2000), *aff'd* 267 F.3d 1209 (11th Cir. 2001) ("While a statute of limitations is a procedural device that sets forth the time period within which an action is deemed to have accrued and that is capable of being waived or tolled, a rule of repose is a substantive doctrine of the State, eliminating a cause of action. . . ."). Thus, after 20 years, Alabama law does not recognize a substantive cause of action at all; there is no claim to which CERCLA § 309's discovery rule for accrual can be applied.

Plaintiff offers a bare citation to *Morgan v. Exxon Corp.*, 869 So. 2d 446 (Ala. 2003), for the proposition that CERCLA § 309 applies to repose periods.  Plf. Response at 6.  But in *Morgan*, the Court held that CERCLA § 309 could not possibly apply because the plaintiff failed to present evidence of a "release of a hazardous substance."  *Id.* at 450, 452.  Thus, the Court did not address (1) whether CERCLA § 309 can apply without an underlying CERCLA claim or (2) whether CERCLA § 309 can circumvent a state repose period.  *Id.* at 450.  Indeed, it appears that no party even raised the issue of whether § 309 could preempt a repose period.

Accordingly, even if the Court applies CERCLA § 309 to save Plaintiff's claims from the statutes of limitations, § 309 cannot preempt the running of Alabama's 20-year repose period. The repose period ran from November 1983, regardless of whether it was triggered by Pactiv's conduct or the accrual of the decedent's claims.  All of Plaintiff's claims against Pactiv are therefore time-barred under the rule of repose.  The Complaint should be dismissed in its entirety for failure to state a claim.

## III.    Plaintiff Lacks Standing Under Alabama Code § 6-5-410 To Assert The Tort Claims Alleged In Counts 1 Through 8.

Alabama Code § 6-5-410 governs wrongful death cases brought under Alabama law. Section 6-5-410 permits exactly one cause of action in cases where the decedent dies before filing suit—a wrongful death claim.  *See also* Ala. Code § 6-5-462 (specifying that unfiled tort claims do not survive in favor of the personal representative).  Because the decedent in this case died before filing suit, the only cause of action available to Plaintiff is a wrongful death claim.

Plaintiff does not dispute the applicability of Alabama Code §§ 6-5-410 and 6-5-462. Plaintiff instead explains that the Complaint's "individual counts are simply the underlying grounds for the wrongful death claims."  Plf. Response at 17.  This is improper pleading.  *See* Fed. R. Civ. P. 8(a).  Plaintiff admits she is not entitled to relief on each separate claim in the

Complaint.  Yet each count presents a distinct legal theory with different elements, standards, and potential damages.  Plaintiff cannot amend the complaint through her response brief to transform eight separate counts into a single cause of action.

### IV.    Count 3 (Negligence *Per Se*) Fails To State A Claim.

#### A.    Plaintiff Fails To Allege Which Laws Pactiv Supposedly Violated.

The two-paragraph Count 3 alleges that Pactiv was negligent in that it violated "the laws and regulations of the State of Alabama."  Complaint ¶ 112.  As set forth in Pactiv's Memorandum of Law (at 16), notice pleading requires Plaintiff to identify the specific statutes and provisions at issue.  Plaintiff does not dispute this.  Instead, Plaintiff tries to amend the complaint through her response brief by arguing that Pactiv violated unspecified provisions of the Alabama Hazardous Waste Management and Minimization Act.  Plf. Response at 19 (citing Ala. Code §§ 22-30-1, *et seq.*).  Even if the complaint could be amended in such a fashion, Plaintiff still fails to cite which provisions of the HWMMA Pactiv supposedly violated, as required by notice pleading.  *See* Pactiv's Memorandum of Law at 16.  Tellingly, in *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1010 (11th Cir. 2004), the case cited by Plaintiff, the complaint identified "six independent violations of state and federal RCRA regulations, standards, and prohibitions."  Plaintiff fails to plead that here.[8]  Count 3 should be dismissed.

---

[8] Instead, Plaintiff presents the Court with a flurry of factual affidavits and documents (which are irrelevant for a Rule 12(b)(6) motion) and apparently assumes that the Court and Pactiv can find in the HWMMA what provisions Plaintiff contends are at issue.  But the Court is not obligated to "manufacture arguments on Plaintiff's behalf."  *Bowden v. Wal-Mart Stores, Inc.*, 124 F. Supp. 2d 1228, 1236 (M.D. Ala. 2000).  And this does not provide adequate notice to Pactiv.

**B.    The HWMMA Cannot Support A Negligence Per Se Claim.**

The flaw with Count 3 is not just a pleading defect.  Even if Plaintiff were to identify the specific provisions of the HWMMA that are at issue, the HWMMA cannot support a negligence *per se* claim as a matter of law because it was enacted to protect the general public.

Under Alabama law, "[n]ot every violation of a statute or an ordinance is negligence *per se*."  *Parker Bldg. Servs. Co. v. Lightsey*, No. 1031377, 2005 WL 141513, at *3 (Ala. 2005).  A plaintiff cannot state a claim for negligence *per se* unless the law at issue was enacted to protect a specific class of persons, "distinguished from the general public."  *Id.*  Thus, in *Lightsey* and *Thomas Learning Center, Inc. v. McGuirk*, 766 So. 2d 161, 170-72 (Ala. Civ. App. 1998), Alabama courts examined the statements of legislative purpose behind building codes and contractor licensing statutes and held that the laws could not support negligence *per se* claims because they were enacted to protect the general public.

Like the building code and contractor licensing statutes, the HWMMA was enacted to protect the general public.  The Alabama legislature set forth its purpose and intent for the HWMMA in Alabama Code § 22-30-2:

> The Legislature finds that the generation and management of hazardous waste is a continuing problem.  Further, that without adequate safeguards, the generation, treatment, storage and disposal of such wastes can create conditions which threaten <u>human health or the environment</u>.  The Legislature, therefore, declares that in order to minimize and control any such hazardous conditions, it is in the <u>public interest</u> to establish and to maintain a statewide program, administered by the Alabama Department of Environmental Management, to provide for the safe management of hazardous wastes.

*Id.* (emphasis added).  The HWMMA plainly benefits the general public and the environment, not a specific class of persons to which the decedent belonged.  Plaintiff virtually concedes this. *See* Plf. Response at 20 ("[T]he citizens of Lockhart and Florala [are] a protected class of

people."). The HWMMA therefore cannot support a negligence *per se* claim. Indeed, Plaintiff does not cite a single case recognizing a negligence *per se* claim under the HWMMA.

Plaintiff's response avoids this "general public" limitation entirely. Plaintiff merely cites to *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993 (11th Cir. 2004), which she oddly claims is "remarkably similar" to the instant case. Plf. Response at 18. Yet *Parker* only involved a RCRA and CWA citizen suit. In *Parker*, the Eleventh Circuit did not address (1) a negligence *per se* claim, (2) the "general public" limitation on negligence *per se* under Alabama law (*Parker* arose in Georgia), or (3) the HWMMA. *Id.* at 1000 (stating that the only issue on appeal was the RCRA and CWA claims, not negligence *per se*). It is hard to see how *Parker* is relevant at all to the narrow legal issue presented by Pactiv's Motion to Dismiss.[9]

Accordingly, even if Count 3 was properly pled, it still must be dismissed because alleged violations of the HWMAA cannot support a negligence *per se* claim as a matter of law.

## V.    Count 6 (Conspiracy) Fails To State A Claim.

As set forth in Pactiv's Memorandum of Law (at 21), a *prima facie* conspiracy claim would require Plaintiff to plead at least (1) an affirmative agreement or "meeting of the minds" between Pactiv and Louisiana-Pacific, and (2) an underlying act giving rise to a viable cause of action. *See, e.g., First Bank of Childresburg v. Florey*, 676 So. 2d 324, 327 (Ala. Civ. App. 1996). A conspiracy claim requires more than mere conclusory notice pleading. *See Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Notwithstanding Plaintiff's many theories in

---

[9] Plaintiff also cites a Ninth Circuit RCRA citizen suit case which notes that those who live adjacent to landfills are particularly at risk from improper operations. Plf. Response at 18 (citing *Covington v. Jefferson County*, 358 F.3d 626, 639 (9th Cir. 2004)). But under Alabama law, that some members of the general public are at risk more than others does not mean that the statute was enacted to protect a specific class of persons, so as to allow a negligence *per se* claim. For example, the plaintiff in *Lightsey* was certainly put at risk by building code violations more than other members of the public (by walking on an improperly constructed roof), yet the Alabama Supreme Court still held that she could not assert a negligence *per se* claim.

her response (which were not pled in the Complaint), Plaintiff fails to sufficiently allege the necessary elements of a claim.

A.    **Plaintiff Fails To Allege An Agreement To Conspire.**

Plaintiff must allege an affirmative agreement, or meeting of the minds, between Pactiv and Louisiana-Pacific.  Merely alleging similar conduct by the two parties is not enough.  *See, e.g., Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1361 (10th Cir. 1989) ("[E]ven conscious parallel business behavior, standing alone, is insufficient to prove conspiracy.").  Although it is certainly not necessary for each conspirator to know <u>all</u> of the details of a conspiracy, there still has to be some <u>communication</u>, showing that the parties actually had an affirmative agreement or meeting of the minds to accomplish an unlawful purpose.  *See, e.g., Peters v. HUD*, No. 04:06057, 2006 WL 278916, at *7 (D.N.J. Feb. 1, 2006) (granting motion to dismiss conspiracy claim for failure to allege communication regarding a wrongful purpose or to allege a shared deliberate scheme).

Neither the Complaint nor Plaintiff's response alleges a single communication or agreement between Pactiv and Louisiana-Pacific.  Without communications, there could be no affirmative agreement or meeting of the minds.

Plaintiff instead argues that a conspiracy existed because Pactiv and Louisiana-Pacific were successive owners of the facility.  According to Plaintiff, the "meeting of the minds" supposedly occurred "when each successive defendant knowingly accepted the improper disposal practices of its predecessor and continued the intentional 'masking' of environmental non-compliance."  Plf. Response at 22.  Where is the agreement there?  No matter how Plaintiff slices it, Plaintiff fails to allege this core element of a conspiracy.

Plaintiff's reliance on *United States v. Hansen*, 262 F.3d 1217 (11th Cir. 2001), is misplaced. In *Hansen*, three executives of the <u>same operator</u> were charged with criminal conspiracy. The executives' knowledge of their <u>common</u> "continuing" and "affirmative" legal obligations, along with other factors, provided sufficient circumstantial evidence that an agreement existed to operate the facility in violation of environmental laws. *Id.* at 1246-47. In other words, since the three executives <u>jointly operated</u> the facility in violation of environmental laws for a decade, a jury could infer that an agreement was in place.

A similar inference is not supportable here, since wholly <u>independent entities</u> operated the facility during entirely <u>different time periods</u>. That Pactiv and Louisiana-Pacific were each subject to their own <u>separate</u> "affirmative" and "continuing" legal obligations when they operated the facility at different times does not provide circumstantial evidence of an affirmative agreement to violate environmental laws.

Ultimately, instead of using disregard for known legal obligations as circumstantial evidence of an agreement, as was the case in *Hansen*, Plaintiff attempts to use those obligations to replace the affirmative agreement element entirely. There is no exception to the affirmative agreement requirement in environmental cases as Plaintiff appears to suggest.

**B.    Plaintiff Fails To Plead The Underlying Basis For The Alleged Conspiracy.**

Plaintiff also fails to allege a viable underlying wrong. "Where civil liability for a conspiracy is sought to be enforced, the conspiracy itself furnishes no cause of action. The gist of the action is not the conspiracy alleged but the wrong committed." *Thompson Props. v. Birmingham Hide & Tallow Co.*, 897 So. 2d 248, 267 (Ala. 2004).

In this case, Plaintiff alleges that Pactiv and Louisiana-Pacific conspired "to violate the rules, regulations and laws of the State of Alabama." *See* Complaint ¶ 126. As set forth in

Pactiv's Memorandum of Law (at 16, 20), and herein (at 17), these vague allegations do not satisfy notice pleading requirements.  Count 3 must be dismissed.

## VI.    Count 7 (Products Liability) Fails To State A Claim.

As set forth in Pactiv's Memorandum of Law (at 21-23), Count 7 fails to allege two essential elements of an Alabama Extended Manufacturer's Liability Doctrine ("AEMLD") claim:  (1) that the decedent was a "user or consumer" of the firewood, and (2) that Pactiv was "in the business" of selling firewood.  Plaintiff's AEMLD claim must also be dismissed as untimely even if the Court finds that CERCLA § 309 saves the rest of Plaintiff's claims because product liability claims are expressly excluded from CERCLA § 309.  *See infra* at 10 n.6.

### A.    Plaintiff Fails To Allege That Decedent Used Or Consumed The Firewood.

The AEMLD only imposes liability on parties who sell a defective product that is "unreasonably dangerous to the plaintiff as the end user or consumer."  *Casrell v. Altec Indus., Inc.*, 335 So. 2d 128, 132-33 (Ala. 1976) (emphasis added); *see also Atkins v. Am. Motors Corp.*, 335 So. 2d 134, 140-41 (Ala. 1976) ("Liability . . . attaches solely because the defendant has exposed expected users of a product not reasonably safe to unreasonable risks.").

Plaintiff believes that *Dillard v. Pittway*, 719 So. 2d 188 (Ala. 1998), shows that the AEMLD extends to anyone.  Plf. Response at 22.  Plaintiff grossly misinterprets *Dillard*.  The plaintiff in *Dillard* was injured when he ran into a burning building in an attempt to save the lives of the occupants.  *Id.* at 191.  The plaintiff asserted an AEMLD claim against the manufacturer of the home's smoke detector.  The Alabama Supreme Court began its analysis by recognizing that it is "the ultimate user or consumer" of a product that can assert an AEMLD claim.  *Id.* at 193 (emphasis added).  The Court then crafted a limited exception to the "user or consumer" requirement for rescuers because it did not want to "penalize the commendable

human urge to rescue another in peril." *Id.* at 193-94. The *Dillard* rescuer exception proves the rule. If <u>anyone</u> can bring an AEMLD claim as Plaintiff argues, then the Court never would have had to consider whether to create an exception for rescuers.

Plaintiff then offers a lengthy discussion of the two seminal AEMLD companion cases, *Casrell* and *Atkins*. Notably, in each case, the plaintiff was a user or consumer of the defective product. In *Casrell*, the plaintiff was <u>using</u> a utility truck when its telescoping arm contacted a power line. 335 So. 2d at 130. In *Atkins*, the decedent was <u>driving</u> his car when an accident caused the car to fill with burning gasoline. 335 So. 2d at 136.

Plaintiff finds it significant that the AEMLD does not require privity of contract. Plf. Response at 25. But that does not mean that <u>anyone</u> can bring a claim. As the Alabama Supreme Court explained in *Dillard*, "the ultimate user or consumer who seeks recovery in an AEMLD action need not have purchased the product, but could be a family member, friend, employee, guest, or donee of the purchaser." 719 So. 2d at 193 (citing *Atkins*). Comment l to the Restatement (Second) of Torts § 402A similarly explained:

> *User or consumer*. In order for the rule stated in this Section to apply, it is not necessary that the ultimate user or consumer have acquired the product directly from the seller. . . . He may have acquired it through one or more intermediate dealers. It is not even necessary that the consumer have purchased the product at all. He may be a member of the family of the final purchaser, or his employee, or a guest at his table, or a mere donee from the purchaser. The liability stated is one in tort, and does not require any contractual relation, or privity of contract, between the plaintiff and the defendant.

Accordingly, even though privity of contract is not required, Plaintiff can still only state an AEMLD claim if the decedent actually used or consumed the firewood, wherever he got it from. Count 7 lacks this critical allegation.

**B.     Plaintiff Fails To Allege That Pactiv Was "In The Business" Of Selling Firewood.**

Plaintiff also fails to allege that Pactiv was "engaged in the business of selling" the allegedly defective product, as opposed to just being an "isolated or occasional seller." Pactiv's Memorandum of Law at 23. Plaintiff does not dispute that the Complaint was deficient. Plaintiff instead tries to amend her complaint through his response brief by attaching newspaper articles and affidavits.[10] This cannot defeat a Rule 12(b)(6) motion.

**VII.     Count 9 (Spoliation) Fails To State A Claim (As Plaintiff Concedes) And Does Not Allege Any Spoliation By Pactiv.**

Plaintiff concedes that spoliation is not a cause of action under Alabama law and agrees to the dismissal of Count 9. Still, Plaintiff continues to allege that the "defendants" destroyed evidence. It should be stressed going forward, however, that Plaintiff's allegations and affidavits pertain only to alleged conduct by <u>Louisiana-Pacific</u>, not Pactiv. Indeed, if Louisiana-Pacific was in possession of documents that reflected unfavorably on Pactiv, it is hard to see what motive Louisiana-Pacific would have to destroy them.

<u>**CONCLUSION**</u>

For the foregoing reasons, this Court should grant Pactiv's Motion to Dismiss the Complaint. In the alternative, if the Court does not dismiss Counts 3 or 6, Plaintiff should be ordered to provide a more definite statement of those claims.

---

[10] Notably, the exhibits attached by Plaintiff do not even support the notion that Pactiv was "in the business" of selling firewood. For example, in the affidavit from Roy Ezell, the former facility manager who worked at the facility since 1976, Plaintiff apparently asked him to attest that the facility used to "sell end cuts to be used as firewood and continued selling the end cuts until the mill was shut down." He wouldn't. He crossed that sentence out before signing the affidavit. *See* Plf. Ex. B at 5.

Dated May 8, 2006

By: _____/s E. Bryan Nichols_____

H. Thomas Wells, Jr.
Alabama Bar No. WEL004
twells@maynardcooper.com
John A. Earnhardt
Alabama Bar No. EAR006
jearnhardt@maynardcooper.com
Edwin Bryan Nichols
Alabama Bar No. NIC036
bnichols@maynardcooper.com
**Counsel for Pactiv Corporation**

**OF COUNSEL:**
**MAYNARD, COOPER & GALE, P.C.**
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, AL 35203
Tel: (205) 254-1000
Fax: (205) 254-1999

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2006, I filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

*COUNSEL FOR DEFENDANTS LOUISIANA-PACIFIC CORPORATION*

> Dennis R. Bailey
> R. Austin Huffaker
> Rushton, Stakely, Johnston & Garrett
> P. O. Box 270
> Montgomery, AL  36101

*COUNSEL FOR PLAINTIFF*

> W. Eason Mitchell
> Colon Law Firm
> P. O. Box 866
> Columbus, MS  39703
>
> Gregory A. Cade
> W. Lee Gresham III
> Fred R. DeLeon
> Environmental Litigation Group
> 3529 Seventh Avenue South
> Birmingham, AL  35222

> _____s/ E. Bryan Nichols_____
> E. Bryan Nichols
> 1901 Sixth Avenue North
> Suite 2400
> Birmingham, Alabama 35203
> Telephone: (205) 254-1184
> Facsimile: (205) 254-1999
> E-mail: bnichols@maynardcooper.com
> Bar Number: NIC036